Filed 12/24/14  P. v. Bae CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048395 |
| v. | (Super. Ct. No. 09NF2916) |
| JIMMY BAE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Daniel Barrett McNerney, Judge.  Affirmed.

Law Offices of Michael L. Guisti and Michael L. Guisti for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

Defendant Jimmy Bae appeals after a jury found him guilty of attempted forcible rape and attempted kidnapping to commit a sex offense.  We affirm.  We conclude (1) sufficient evidence supported Bae's conviction for kidnapping to commit rape; (2) the trial court did not err by stating that if Bae's counsel's statements at the sentencing hearing could be construed as a motion for a new trial based on the insufficiency of the evidence, the court would deny that motion; and (3) the prosecutor did not engage in misconduct during closing argument.

FACTS

During the evening of May 2, 2009, A.K., who was 29 years old at the time of trial, was in Los Angeles with her sister and a few friends to celebrate her boyfriend's birthday.  She started driving back to her home in Fullerton sometime after 2:00 a.m.; her sister was asleep in the passenger seat of the car.

A.K. exited the freeway and stopped at a red light at the end of the offramp; her home was a seven- to 10-minute drive from the freeway.  When the light turned green, she turned left.  She noticed a car, which she later described as a white sedan, was following her and making every turn she made.  A.K. started making extra turns instead of driving her normal route home to see whether the car would continue to follow her; it did.  She did not hear any honking; it did not appear to her that the driver of the car following her was trying to get her attention.  The car continued to follow her.

A.K. drove around the block and down the narrow alley where her home was located.  She stopped the car but left the engine running; she did not stop directly in front of her home because she did not want the driver of the car following her to know exactly where she lived.  She saw the car stop behind her; the car's headlights had been turned off, leaving only the parking lights on.

2

While sitting in her car, A.K. looked in the passenger side mirror. She saw a man, wearing a white glove, who appeared to have a gun in his hand, walk toward her car. She quickly drove away. After she again saw the car that had been following her and it quickly turned to drive toward her, she called 911 and explained what was happening. The 911 operator told her where to go to meet nearby police officers. She drove to where the operator had told her the officers were, and explained to them what had happened. The officers followed her home.

When A.K. drove back to her home, she saw the white sedan. The officers saw someone inside the white sedan; that person was ducking down as if trying to hide. The officers spoke to the sedan's occupant, who was later identified as Bae, and had him get out of the car. One of the officers conducted a search of the car and found a maroon bag with a name tag on it that said, "Jimmy Bae." The bag contained a bottle of baby oil, an operational stun gun, a roll of duct tape, panty hose, a cigar tube and cigar, a holster that could hold a taser gun, two pairs of latex gloves, a pair of gloves, a Christmas bag containing electric clippers, black track pants and top, a black baseball cap, a toilet paper roll, and a camera.

Sergeant Kathryn Hamel of the Fullerton Police Department testified she was familiar with situations where someone will assemble a bag of tools for the purpose of committing sexual assaults. She stated such a bag would typically contain a weapon to disable or incapacitate the victim, a lubricant, a binding agent, either a phone or camera to use to memorialize the assault, latex gloves, possibly a change of clothing, and some form of "trophy" taken from the victim.

Hamel testified that latex gloves are used to decrease the chance of the assailant's DNA being transferred to the victim. Panty hose and duct tape can be used to gag or otherwise silence the victim; those materials can also be used to bind the victim's hands or feet. Lubricants are used to facilitate forcible penile penetration. Hamel further explained that petroleum-based products, such as Vaseline or baby oil, are often preferred

3

by assailants over products specially designed for sexual lubrication because they are readily available, inexpensive, and less difficult to explain if found by a spouse or partner. Electrical shears can be used by assailants to remove unwanted body hair from the victim, to remove hair from the assailant to reduce the transfer of evidence to the victim, or to take a trophy from the victim. Cylindrical objects are sometimes used to torture the victim or to help facilitate forcible vaginal and anal penetration.

Hamel testified that stranger rape is not the most common form of sexual assault. In the instance of stranger rape, the perpetrator typically picks a victim who appears to be alone and vulnerable.

When Bae was interviewed by police, and when he testified at trial, Bae explained he had followed A.K. because he observed her driving poorly and he feared that she might be driving under the influence. Bae further explained he had followed her home because he wanted to be sure she got there safely. He stated that even after she drove off, he went back to the street where she lived to wait for her to return because he wanted to know she was safe. He did not know another person was in the car with A.K.

At trial, Bae offered evidence explaining why he had various items in the maroon bag with him. That evidence included Bae's testimony that he used latex gloves to wash his car. Bae's wife testified that the panty hose and the baby oil belonged to her; she testified she used the baby oil for her skin problem. She testified Bae had purchased the stun gun for her protection but she had not learned to use it yet. She said Bae used toilet paper as Kleenex because it was less expensive. She also said the duct tape was needed to fix the ventilation pipe on the washer.

PROCEDURAL BACKGROUND

Bae was charged in an amended information with one count of attempted forcible rape in violation of Penal Code sections 664, subdivision (a) and 261, subdivision (a)(2), and one count of attempted kidnapping to commit a sex offense in

4

violation of section 664, subdivision (a) and Penal Code section 209, subdivision (b)(1). The jury found Bae guilty of both counts as charged. The trial court sentenced Bae to a total prison term of seven years. Bae appealed.

DISCUSSION

I.

*Substantial Evidence Showed Bae Committed the Offense of Attempted Kidnapping for the Purpose of Committing Rape.*

Bae contends insufficient evidence supported his conviction for attempted kidnapping for the purpose of committing rape. "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The testimony of a single witness, unless physically impossible or inherently improbable, is sufficient to support a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The jury was instructed with CALCRIM No. 460 as follows:

"The defendant is charged in ct. 1 with attempted rape, and in ct. 2 with attempted kidnapping to commit rape.

5

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant took a direct but ineffective step toward committing the target offenses of rape and kidnapping to commit rape;

"AND

"2. The defendant intended to commit the target offenses of rape and kidnapping to commit rape.

"A direct step requires more than merely planning or preparing to commit the target offenses or obtaining or arranging for something needed to commit the target offenses. A direct step is one that goes beyond planning or preparation and shows that a person is putting his plan into action. A direct step indicates a definite and unambiguous intent to commit the target offenses. It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.

"A person who attempts to commit the target offenses is guilty of attempted target offenses even if, after taking a direct step towards committing the crime, he abandoned further efforts to complete the crime or if his attempt failed or was interrupted by someone or something beyond his control. On the other hand, if a person freely and voluntarily abandons his plans before taking a direct step toward committing the target offenses, then that person is not guilty of attempted rape and kidnapping to commit rape.

"To decide whether the defendant intended to commit rape and kidnapping to commit rape please refer to the separate instructions that I . . . will give . . . you on that crime." (Brackets omitted.)

The court instructed the jury on the elements of the "target" offense of kidnapping for the purpose of committing rape with CALCRIM No. 1203, which stated in part:

6

"To prove that the defendant is guilty of this crime, the People must prove that the defendant intended to do the following:

"1. The defendant intended to commit rape;

"2. Acting with that intent, the defendant took, held, or detained another person by using force or by instilling a reasonable fear;

"3. Using that force or fear, the defendant moved the other person [or made the other person move] a substantial distance;

"4. The other person was moved or made to move a distance beyond that merely incidental to the commission of a rape;

"5. When that movement began, the defendant already intended to commit rape;

"[AND]

"6. The other person did not consent to the movement."

Bae does not challenge any jury instructions in this appeal. He contends insufficient evidence supported the jury's finding that he committed attempted kidnapping to commit rape. Bae's argument is without merit.

Bae does not challenge the sufficiency of the evidence supporting the jury's finding that he was guilty of attempted forcible rape. In any event, substantial evidence supported the jury's finding: Bae had assembled a bag of tools typically used by a person intending to commit rape and kept them in the car he was driving during the early morning hours of May 3, 2009; he spotted a young woman, who appeared to be alone, and followed her home; he parked his car behind hers and approached her on foot with a weapon in his gloved hand; and after the young woman drove away, he initially pursued her but then parked outside her home, waiting for her to return.

Bae's substantial evidence argument does not challenge the finding that he intended to rape A.K., but the finding that he attempted to kidnap her to do so. Sufficient evidence showed Bae attempted to detain A.K. by using force or by instilling a

7

reasonable fear. After Bae parked his car behind A.K.'s car, he walked toward her car, carrying what appeared to her to be a gun in his gloved hand. A stun gun was recovered from Bae's car when the officer conducted his search. The jury could reasonably find Bae intended to use that weapon to either immobilize A.K. or threaten her with it to comply with his demands.

The evidence also supported the jury's finding that Bae's plan was to move A.K. to a distance beyond that merely incidental to the commission of a rape against her. When Bae approached A.K. in her car, he left most of the items in the maroon bag, which Hamel testified were commonly used by rapists, in his car. He did not grab the maroon bag and take it with him as he approached A.K.'s car; he only took the stun gun. He also left the parking lights on in his car, thereby showing his intention to immediately return with A.K. to his car. Thus, the jury's finding that Bae intended to move A.K. from her car to a place beyond that merely incidental to the commission of a rape—whether to her residence, his car, or otherwise—was supported by substantial evidence.

## II.

### *The Trial Court Did Not Err by Commenting on the Sufficiency of the Evidence to Support the Jury's Verdicts at the Sentencing Hearing.*

Bae argues the trial court erred by ruling on a motion for a new trial, which was not before the court, and acted in excess of its jurisdiction. Following the jury's verdicts, Bae's trial counsel stated his intention to file a motion for a new trial, but none was filed.

At the sentencing hearing, the trial court stated that it had calendared a motion for a new trial. The court confirmed that Bae did not file a motion for a new trial and that the court was to impose sentence. Before imposing sentence, however, the trial court commented on Bae's counsel's statements in his sentencing brief and at the sentencing hearing, which the court construed as suggesting that insufficient evidence supported the attempted kidnapping for the purpose of committing rape conviction. The

8

court stated: "So to the extent that [counsel's statements] may be viewed at a later date as a de facto motion for a new trial regarding that offense, let me indicate that, serving as the 13th juror in this case, I do find that the evidence was more than sufficient to prove beyond a reasonable doubt that that offense was, in fact, committed, that the defendant did, in fact, attempt to commit the—the defendant did attempt to kidnap the victim for purposes of rape." The court then explained that it was most disturbed by the evidence of Bae's advanced planning to commit the offenses and how he "put that plan in action" after having selected A.K. as his target. The court thereafter proceeded to impose sentence.

Bae does not cite any legal authority showing the trial court erred by stating for the record, in light of Bae's counsel's statements, that it would have denied any motion for a new trial before it. In any event, Bae has failed to show how any error would have been prejudicial. He argues, "Bae's reason for waiving the motion for a new trial was to bring the issue on his appeal. However, the Court by deeming the sentencing argument and brief as a motion for new trial and subsequently denying the motion for new trial attempted to deprive Defendant of that opportunity." The trial court's denial of a motion for a new trial, based on the sufficiency of the evidence, does not preclude a criminal defendant from raising a substantial evidence challenge on appeal. Bae does not cite any legal authority stating otherwise. Indeed, Bae has raised his substantial evidence challenge to his conviction for attempted kidnapping to commit rape, which we have considered and rejected for the reasons explained, *ante*.

### III.

*Bae's Trial Counsel Was Not Ineffective for Failing to Object to
a Portion of the Prosecutor's Closing Argument.*

Bae argues his trial counsel was ineffective for failing to object to the prosecutor's statements during closing argument, which Bae contends, wrongfully accused Bae's trial counsel of intending to confuse or mislead the jury. (See *People v.*

9

*Panah* (2005) 35 Cal.4th 395, 462 [the defendant forfeited claim of prosecutorial misconduct in closing and rebuttal arguments by failing to object to challenged portions and request an admonition to the jury].) For the reasons we explain, the prosecutor did not engage in misconduct; therefore, Bae's trial counsel was not ineffective for failing to object to the prosecutor's statements.

"'""The standards governing review of misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' [Citation.] . . . When a claim of misconduct is based on the prosecutor's comments before the jury, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."' [Citation.]" [Citation.]'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 427.)

In his opening brief, Bae's contentions of prosecutorial misconduct are based on the following statements by the prosecutor during closing argument: "When you listen to defense's argument, keep a couple things in mind. One, ask yourself does this information help me to determine the facts or is it being stated to confuse me or mislead me? Ask yourself most importantly, is this reasonable in light of all of the other evidence, right? Because, I can tell you what [Bae's counsel] is going to do. Okay. He's going to get up here and he's going to say, but there's a good explanation for the baby oil. My wife has eczema. There's a good explanation for the gloves and there's a good explanation for the stun gun and there's a good explanation for all these things. Well, ladies and gentlemen, this isn't a new defense tactic to separate things out. It's when you are a new D.A. you end up trying a lot of DUIs. It's a common crime so that's what you sort of do trials on. And basically what you will hear is I have red watery eyes because I

10

have allergies.  And I didn't walk the line very well because I have a knee injury.  And my driving was bad and I crossed over the lines a couple times because my cell phone rang and it dropped and I looked down, right?  None of that takes away the fact the person is well above the legal limit; right?  But that's what defense does.  They take each piece out and separate it out and try to take it away and say, but on [its] own, I have got a reason for it."

The prosecutor continued:  "It's the same thing.  You get a video, what are you going to do?  You are going to slow it down and go frame by frame because it's going to desensitize you and you're going to say, well, this one act on its own isn't so bad, when not taken together.  The fact is, in your lives you don't look at one thing by itself, right?  Never in your life.  If you are out buying a house, and you say I want a three bedroom house.  You don't just go there's the first three bedroom house that, I found I'm going to buy it.  You look at factors, you look at price, you look at does it have enough bathrooms, do I have kids in the school system and is this a good school area.  Does it have an attached garage.  You don't look at one thing.  You take everything together and determine the facts.  You don't look at one piece of evidence.  You look at the evidence in light of the other evidence.  And so I'm going to ask you to keep that in mind as you're listening to the defense's argument and ask yourself, when I look at everything, is this reasonable."

The California Supreme Court has held:  "'A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel.'  [Citation.]  '[H]arsh and colorful attacks on the credibility of opposing witnesses[, however,] are permissible.  [Citations.]  Thus, counsel is free to remind the jurors that a paid witness may accordingly be biased and is also allowed to argue, from the evidence, that a witness's testimony is unbelievable, unsound, or even a patent "lie."'  [Citation.]  But '[i]f there is a reasonable likelihood that the jury would understand the prosecutor's statements as an assertion that defense counsel sought to deceive the jury,

11

misconduct would be established.'  [Citation.]"  (*People v. Pearson* (2013) 56 Cal.4th 393, 442.)

Here, the prosecutor did not attack Bae's trial counsel's integrity.  The prosecutor cautioned the jury not to be confused or misled by the evidence Bae's counsel wanted the jury to focus on, instead of the evidence that the prosecutor considered most relevant.  (See *People v. Cummings* (1993) 4 Cal.4th 1233, 1302, fn. 47 ["An argument which does no more than point out that the defense is attempting to confuse the issues and urges the jury to focus on what the prosecution believes is the relevant evidence is not improper."].)

The prosecutor was not rude or intemperate, and did not use deceptive or reprehensible methods to persuade the jury.  Even if the prosecutor's statements constituted misconduct, on this record it is not reasonably likely the jury construed or applied any of the complained-of remarks in an objectionable fashion.  (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 427.)  Bae's trial counsel, therefore, did not render ineffective assistance by failing to object to those statements.

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

12